## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**TERRY HARRIS (# 433105)**                                   **CIVIL ACTION NO.**

**VERSUS**                                                    **18-672-JWD-EWD**

**JOHN DOE, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on January 14, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**TERRY HARRIS (# 433105)**                    CIVIL ACTION NO.

**VERSUS**                    18-672-JWD-EWD

**JOHN DOE, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are three Motions to Dismiss ("Motions"),[1] the first two filed on behalf of Tracy Falgout ("Falgout"),[2] and the third filed on behalf of Lars Ducote ("Ducote"). The Motions are opposed.[3] For the following reasons, the undersigned recommends the Motions be granted. On the Court's own motion, dismissal of the remaining claims in this case under 28 U.S.C. §§ 1915(e) and 1915A is also recommended.

## I.    Background

Terry Harris ("Plaintiff"), an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, who is representing himself, filed this action pursuant to 42 U.S.C. § 1983 against Michael Thomas ("Thomas"),[4] John Doe, Cynthia Park ("Park"),[5] Falgout, Jamie Sharp and Ducote[6] (collectively "Defendants"). Plaintiff makes the following allegations: Thomas and John Doe violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to Plaintiff's serious medical needs; Park retaliated

---

[1] R. Docs. 13, 22 & 27.

[2] Jamie Sharp was dismissed from this action via Plaintiff's amended Complaint (*See* R. Doc. 26); however, prior to dismissal, Jamie Sharp filed the Motions to Dismiss with Tracy Falgout (R. Docs. 13 and 22). Since Jamie Sharp has been dismissed, he is no longer referred to as a movant in this Report.

[3] R. Docs. 31 & 32.

[4] Michael Thomas was originally named as a "John Doe EMT." Plaintiff identified one of the John Doe EMTs as Michael Thomas in an amended complaint. (*See* R. Doc. 23).

[5] Plaintiff had mistakenly named Cynthia Park, originally, as Cindy Parker; this was corrected via amendment (*See* R. Doc. 26).

[6] Lars Ducote was originally named as L. Ducote, but the name was subsequently corrected. (*See* R. Doc. 20).

against Plaintiff; Falgout and Sharp violated his constitutional rights by denying Plaintiff access to the Courts; and Lars Ducote violated Plaintiff's right of due process by denying Plaintiff's grievances.[7]

For purposes of a Rule 12(b) motion, well pled factual allegations are accepted as true.[8] Plaintiff alleges that on February 15, 2017, he made a sick call complaining of a herpes outbreak.[9] An EMT, later identified as Thomas,[10] responded to the sick call but failed to examine Plaintiff; the EMT told Plaintiff he would see a doctor.[11] Plaintiff made another sick call the following day, and another EMT, named in the Complaint as a "John Doe," responded to that sick call. This EMT also failed to examine Plaintiff but again assured Plaintiff he would see a doctor.[12] On February 21, 2017, Plaintiff was at a dental appointment and complained about the problem with his outbreak.[13] The dentist referred Plaintiff to be seen at the "ATU," but upon arrival at the ATU, Plaintiff was not seen or examined.[14]

The following day, Plaintiff was on another call-out for dental, and Park examined Plaintiff.[15] After examination, Park immediately[16] had Plaintiff transferred to an outside facility for examination. At the outside facility, Plaintiff was informed he had "an advanced case of paraphimosis," and if he had gone any longer without treatment, he would have "lost his penis."[17] Initially, prescribed treatment allegedly failed, so Plaintiff was given a date for surgery.[18]

---

[7] R. Doc. 1.
[8] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).
[9] R. Doc. 1, p. 4.
[10] R. Doc. 23. Plaintiff amended his complaint to indicate this individual, originally named John Doe, was Michael Thomas.
[11] R. Doc. 1, p. 4.
[12] R. Doc. 1, p. 4.
[13] R. Doc. 1, p. 4.
[14] R. Doc. 1, p. 4.
[15] R. Doc. 1, p. 4.
[16] R. Doc. 20, p. 3.
[17] R. Doc. 1, p. 5.
[18] R. Doc. 1, p. 5.

Plaintiff filed a grievance on April 27, 2017 ("ARP 1") against the two EMTs (Thomas and John Doe) and the personnel at the ATU who failed to see Plaintiff after he was referred to the ATU by the dentist. Plaintiff alleges that the failure of the EMTs and the personnel at the ATU to see and examine Plaintiff led to a worsening of his condition, which resulted in the "advanced case of paraphimosis."[19] While ARP 1 was pending, Plaintiff made three sick calls between July 11 and 12, 2017 for swollen feet and numbness.[20] On January 31, 2018, Plaintiff made another sick call request regarding another herpes outbreak and requested to see Park.[21] Since Plaintiff had filed ARP 1, he had not seen a doctor, so on June 5, 2018, he filed another grievance on June 5, 2018 ("ARP 2"), claiming retaliation for filing ARP 1.[22]

Ducote denied the grievances filed by Plaintiff.[23] On June 3, 2018, Plaintiff requested that Falgout provide the names of the EMTs who answered his sick calls in February 2017. Jamie Sharp responded, informing Plaintiff that he could not get a copy of his medical records. Plaintiff alleges he was hindered from filing his Complaint because he was not provided the names of the EMTs. Plaintiff seeks injunctive and monetary relief.[24]

## II.    Law & Analysis

### A.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires, "a short and plain statement of the claim showing that the pleader is entitled to relief."[25] In order to survive a Rule 12(b)(6) motion, a pleading's

---

[19] R. Doc. 1, p. 5.
[20] R. Doc. 1, p. 5.
[21] R. Doc. 1, p. 5.
[22] R. Doc. 1, p. 5.
[23] R. Doc. 1, p. 5.
[24] R. Doc. 1, p. 6.
[25] Fed. R. Civ. P. 8(a)(2).

language, on its face, must demonstrate that there exists plausibility for entitlement to relief.[26] "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[27]  In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim.[28]  Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion.[29]

### B.  Supervisory Capacity Claims

Falgout argues he cannot be held liable pursuant to § 1983 because he was acting in only his supervisory capacity and was not directly involved in any constitutional deprivation alleged by Plaintiff.[30]  Supervisory officials may be held liable under § 1983 only if they affirmatively participate in acts that cause constitutional deprivation or implement unconstitutional policies that causally result in plaintiff's injury.[31]  Any allegation that a named defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.[32]  Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must be able to show that the deprivation of his constitutional rights has occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or

---

[26] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).
[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted).
[28] *Twombly*, 550 U.S. at 557.
[29] *Iqbal*, 556 U.S. at 678.
[30] R. Doc. 13-1, p. 8.
[31] *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992).
[32] *See Iqbal*, 556 U.S. at 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).  *See also Bell v. Livingston*, 356 Fed. Appx. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability").

4

as a result of a breach by the supervisor of an affirmative duty specially imposed by state law.[33] Supervisory liability[34] can be found to exist if a supervisory official implements a policy so deficient that the policy itself may be seen to be a repudiation of constitutional rights and may be seen to be the moving force behind a constitutional violation.[35]

Plaintiff has failed to allege any facts to show that Falgout was directly involved with any alleged constitutional deprivation or that Falgout established or promoted a policy that caused Plaintiff's injury. Regarding deliberate indifference, Plaintiff does not allege Falgout took any part in Plaintiff's treatment. Rather, Plaintiff alleges that Falgout was the supervisor over "medical" and was aware of his "subordinates [sic] unlawful actions."[36] This Court has recognized that wardens, such as Falgout, who is medical warden, have no personal involvement in the day to day medical care of inmates at the facilities.[37] Considering the lack of personal involvement and lack of allegations of unconstitutional policies implemented by Falgout, Falgout cannot be held liable pursuant to § 1983.[38] Plaintiff also alleges that Falgout did not respond to Plaintiff's requests for the names of the EMTs who treated Plaintiff in February 2017.[39] Reading Plaintiff's

---

[33] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

[34] Though the term supervisory liability is often used, the Supreme Court has described this as a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.

[35] *Thompkins v. Belt*, 828 F.2d 298 (5th Cir. 1987).

[36] R. Doc. 31, pp. 3-4. Plaintiff argues that Falgout may be held liable because he was "aware" of the unconstitutional actions of his subordinates and cites *Miller v. King*, 384 F.3d 1248 (11th Cir. 2004) for this proposition. *Miller* reiterates that supervisory officials cannot be held vicarious liable for the inaction of prison medical staff. The facts presented in *Miller* are very different from those presented in this case. In *Miller*, the warden visited the plaintiff's cell and personally viewed the conditions of confinement in which Plaintiff was kept yet failed to provide the plaintiff with medical treatment and the basic living conditions to which he was entitled under the Eighth Amendment. The issues presented here are not regarding basic living conditions; rather the claims concern specific treatment and/or lack of treatment of specific conditions. Further, *Miller* is not an opinion from this Circuit, and the *Miller* decision cited by Plaintiff was vacated and superseded by *Miller v. King*, 449 F.3d 1149 (11th Cir. 2006).

[37] *See Jacobs v. LeBlanc*, Civil Action No. 100-271, 2011 WL 1043239 (M.D. La. Feb. 11, 2011).

[38] *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

[39] R. Doc. 1, p. 5.

5

allegations very broadly, he may also be trying to make a claim for denial of access to the courts as a result of Falgout's lack of response to Plaintiff's inquiry. Even so, this claim also fails.

### C. Access to the Courts

Inmates have a fundamental constitutional right of access to the courts.[40] The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."[41] In its most obvious manifestation, the right of access to the courts protects an inmate's physical access to the courts.[42] Thus, a "prison official may not block or refuse to transmit, through procedural devices, the transmission of legal documents which prisoners wish to send to the courts."[43]

Plaintiff has not alleged that any Defendants physically interfered with him filing suit. Plaintiff had the capability to bring a challenge regarding the alleged deliberate indifference to his serious medical needs because that is the claim that is presently before the court. Plaintiff eventually filed suit against the EMTs that he alleges failed to treat him and initially named the EMTs as "John Does." As discussed below, these claims are prescribed on the face of the Complaint, but the fact that these claims are prescribed on the face of the Complaint is not a result of the conduct of Defendants. Rather, it is due to Plaintiff's delay in filing suit. This Court has previously found that a claim of concealment of identity of a defendant does not rise to the level of a constitutional violation of denial of access to the courts.[44] The pertinent inquiry is whether Plaintiff had the *ability* to file suit, and this question is answered in the affirmative. Assuming one

---

[40] *Lewis v. Casey*, 518 U.S. 343, 351 (1996).
[41] *Lewis,* 518 U.S. at 356.
[42] *Jones v. Menzina*,
[43] *Id.* at *4.
[44] *See Clayton v. Columbia Cas. Co.*, Civil Action No. 11-845, 2012 WL 2952531 at *8-9 (M.D. La. July 19, 2012). *See also Doe v. Dantin*, Civil Action No. 11-467, 2015 WL 3772133 (E.D. La. June 17, 2015).

of the Defendants refused to disclose the identity of the EMTs, Plaintiff still had the ability to file

suit and name the unknown defendants as "John Does," which he did.  As Plaintiff learned the

names of the John Does, he could seek leave to amend his complaint to correct their identities,

which he also did.  Therefore, it was not the actions (or inactions) of any Defendant in this suit,

including Falgout, that prevented Plaintiff from having meaningful access to the Court.  To the

extent Plaintiff seeks to hold Falgout liable for a violation of Plaintiff's right to access to courts,

that claim should be dismissed.

### D.  Processing of Grievances

Plaintiff complains that Ducote denied Plaintiff's grievances regarding his claims of

deliberate medical indifference and retaliation.  Plaintiff alleges that Ducote lied and

misrepresented facts in order to deny the grievances and "protect" the guilty parties.[45]  These are

Plaintiff's only allegations against Ducote.[46]  An inmate does not have a constitutional right to

have his prison disciplinary or administrative proceedings properly investigated, handled, or

favorably resolved,[47] and there is no procedural due process right inherent in such a claim.  As

stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers*:[48]

> Insofar as [the plaintiff] seeks relief regarding an alleged violation
> of his due process rights resulting from the prison grievance
> procedures, the district court did not err in dismissing his claim as
> frivolous…[The plaintiff] does not have a federally protected liberty
> interest in having these grievances resolved to his satisfaction.  As
> he relies on legally nonexistent interest, any alleged due process
> violation arising from the alleged failure to investigate his
> grievances is indisputably meritless.[49]

---

[45] R. Doc. 1, p. 5.
[46] Though the Motion to Dismiss filed on behalf of Ducote fails to present this argument and rather, focuses on claims in the Complaint not directed towards Ducote, these claims would have nevertheless been dismissed by the Court foor failure to state a claim under the screening processes in 28 U.S.C. §§ 1915(e)(2)(b) and 1915A.
[47] *Mahogany v. Miller*, 252 F. App'x. 593, 595 (5th Cir. 2007).
[48] 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance).
[49] *Id*. at 373-74.

Accordingly, Plaintiff's claims against Ducote for denying his grievances fail to state a claim that rises to the level of a constitutional violation,[50] so all claims against Ducote should be dismissed.

> **E. Plaintiff's Claims arising from Lack of Treatment from February 15 through 22, 2017 are Prescribed on the Face of the Complaint and Subject to Dismissal *Sua Sponte***

Plaintiff's remaining claims are subject to dismissal pursuant to 28 U.S.C. §§ 1915(e) and 1915A. Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action against a governmental entity or an officer or employee of a governmental entity if the Court is satisfied that the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted. The statutes impose similar standards for dismissal.[51] Both statutes are intended to afford the court the ability to separate those claims that may have merit from those that lack a basis in law or in fact.

A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'"[52] A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist."[53] The law accords judges not only the authority to dismiss a claim that is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations.[54] Pleaded facts that

---

[50] *Burgess v. Reddix*, 609 Fed.Appx. 211, 212 (5th Cir. 2015)(citations omitted) (Because the plaintiff did not "have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices," the denials of his grievances "do not implicate his constitutional rights or give rise to a 42 U.S.C. § 1983 claim.")

[51] § 1915(e) provides a procedural mechanism for dismissal of those lawsuits against a governmental entity or employee or officer of a governmental entity that are frivolous, malicious, or fail to state a claim in proceedings where the plaintiff was granted leave to proceed *in forma pauperis*; § 1915A provides a procedural mechanism for dismissal of lawsuits by prisoners that are frivolous, malicious, or fail to state a claim upon which relief may be granted regardless of the pauper status of the plaintiff. Plaintiff was granted permission to proceed *in forma pauperis* on March 19, 2019. (R. Doc. 3).

[52] *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

[53] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998).

[54] *Denton*, 504 U.S. at 32.

are merely improbable or strange, however, are not frivolous.[55]  A § 1915 dismissal may be made at any time, before or after service of process and before or after an answer is filed, if the court determines that the allegation of poverty is untrue; or the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.[56]

Although Thomas and John Doe are not movants in any of the Motions before the Court, they are entitled to dismissal pursuant to § 1915(e)(2)(b), as the claims against these Defendants for deliberate medical indifference are prescribed on the face of the Complaint, as amended. "Where it is clear from the face of a complaint filed in forma pauperis that the claims asserted are barred by the applicable statute of limitations, those claims are properly dismissed," pursuant to § 1915(e)(2)(b).[57]  A district court may raise the limitation period *sua sponte*.[58]

To decide the proper limitations period for claims under 42 U.S.C. § 1983, federal courts borrow the forum state's general personal injury limitations period as there is no federal statute of limitations for those actions.[59]  In Louisiana, § 1983 claims must be filed within the one-year prescriptive period applicable to tort actions.[60]  Although Louisiana law governs the limitations period and the tolling exceptions, federal law governs when a cause of action accrues.[61]  Under federal law, a cause of action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action."[62]

---

[55] *Id.* at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992).
[56] *See Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).
[57] *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).
[58] *See Harris v. Heamann*, 198 F.3d 153 (5th Cir. 1999).
[59] *Owens v. Okure*, 488 U.S. 235, 249–50, (1989).
[60] *See Robinson v. Cain, et al.*, 421 F. Appx. 411, 412 (5th Cir. 2011).
[61] *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989).
[62] *Id.* (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir.1980)).

Plaintiff alleges that on February 22, 2017, he was treated at an outside facility where he was informed that he "barely escaped having his penis amputated if they waited any longer" and was diagnosed with an advanced case of paraphimosis.[63]  At the latest, Plaintiff's cause of action against Thomas and John Doe, the EMTs who allegedly failed to examine him from February 15, 2017 to February 22, 2017, accrued on February 22, 2017.  At that time the injury was diagnosed which forms the basis of Plaintiff's action for deliberate indifference.  Accordingly, prescription began to run on February 22, 2017.

Plaintiff states that he filed ARP 1 (regarding the inaction of the EMTs) on April 27, 2017.[64]  Under Louisiana law, the one-year prescriptive period on Plaintiff's claims was suspended while Plaintiff's administrative grievance was pending.[65]  However, by the time Plaintiff filed ARP 1, 63 days had already passed that counted toward the prescriptive period.[66]  Pursuant to Louisiana law, "[n]o more than 90 days from the initiation to completion of the [administrative remedy] process shall elapse, unless an extension has been granted.  Absent such an extension, expiration of response time limits shall entitle the offender to move on to the next step in the process."[67]  90 days following Plaintiff's filing of ARP 1 would have been July 27, 2017.  Even presuming Plaintiff requested the maximum amount of time allowed for extensions, 25 days,[68] the latest date for conclusion of the administrative remedy process would have been on August 22, 2017.[69]  Considering that 63 days passed before Plaintiff filed ARP 1, Plaintiff had until, at the

---

[63] R. Doc. 20, p. 3.
[64] R. Doc. 1, p. 5.
[65] *Turner v. Cain*, Civil Action No. 12-598, 2018 WL 1547863 at *13 (M.D. La. Feb. 28, 2018).
[66] *Wright v. Smith*, Civil Action No. 13-775, 2015 WL 589833 at *5 (M.D. La. Feb. 11, 2015) (the passage of time between when the action accrues and when a plaintiff files his request for administrative remedy counts towards the prescriptive period because prescription is only suspended *while* a request for administrative remedy is pending).
[67] 22 La. ADC Pt. I, § 325 J.1.c.
[68] 22 La. ADC Pt. I, § 325 J.1.c.ii.(b).
[69] Even if the administrative remedy process were not "concluded" by this time (i.e., Plaintiff had not received a response), Plaintiff would have had the right to file suit at the expiration of the time period allotted.  22 La. ADC Pt. I, § 325 J.1.c.

10

latest, June 20, 2018, to file this suit. Plaintiff did not sign his Complaint until July 8, 2018.[70] By that time, 382[71] days had passed. Since, based on the face of the Complaint, Plaintiff's claims against Michael Thomas and John Doe were filed more than one year after Plaintiff's cause of action against these defendants accrued, these claims should be dismissed pursuant to § 1915(e)(2)(b) and § 1915A.

### F. Retaliation

Plaintiff's claims of retaliation against Cynthia Park are also subject to dismissal *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A. Claims of retaliation by prison inmates are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution.[72] For that reason, to prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis,* was undertaken against the prisoner by the defendant, and (4) that there was causation, *i.e.,* that "but for" the retaliatory motive, the adverse action would not have occurred.[73]

Since claims of retaliation are not favored, it is the plaintiff's burden to provide more than mere conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred. This places a significant burden on the inmate.... The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.[74]

---

[70] R. Doc. 1, p. 6.
[71] 63 days prior to filing the grievance plus 319 days from the latest date the administrative remedy process could have concluded (August 22, 2017) to the filing of the Complaint (July 8, 2018).
[72] *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995).
[73] *Morris v. Powell,* 449 F.3d 682, 684 (5th Cir. 2006). *See also Hart v. Hairston,* 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999).
[74] *Id.* at 1166.

Plaintiff alleges that after filing ARP 1, alleging that he was not properly treated by medical personnel in February 2017, he made sick calls and requested to see "Dr. Cindy Parker," but his requests went unanswered.[75]  Plaintiff also alleges that Park claimed "to have ordered a powder without seeing outbreak that Plaintiff never received."[76]  These allegations do not allege intentional conduct by Park.  Further, Park was not named in ARP 1, and Plaintiff does not provide any information regarding Park's motive for any alleged retaliation other than that Plaintiff had filed ARP 1.[77]  As Plaintiff has not provided "direct evidence of motivation," nor a chronology of events from which retaliation may plausibly be inferred, sufficient facts are not alleged to state a claim for retaliation against Park[78] and that claim should be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A.

## RECOMMENDATION

**IT IS RECOMMENDED** that the Motions to Dismiss,[79] filed on behalf of Tracy Falgout and Lars Ducote be **GRANTED** and that Plaintiff's claims against Tracy Falgout and Lars Ducote be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Michael Thomas, John Doe, and Cynthia Park be **DISMISSED WITH PREJUDICE** *sua sponte* pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A.

---

[75] R. Doc. 1, p. 5.
[76] R. Doc. 26, p. 1.
[77] R. Doc. 1, p. 5.  ARP 1 was filed against the two EMTs who allegedly failed to treat Plaintiff in February 2017. Although Plaintiff alleges that Park retaliated to protect her co-employees, this conclusory allegation is not sufficient as Plaintiff has not alleged that Park was aware that ARP 1 had been filed, nor does Plaintiff allege a specific relationship between Park and the EMTs against whom ARP 1 was filed from which the Court could infer a retaliatory motive.
[78] *Papasan v. Allain*, 478 U.S. 265, 286 (1986).
[79] R. Docs. 13, 22, & 27.

**IT IS FURTHER RECOMMENDED** that, if this Report and Recommendation is adopted which resolves all claims in the case, Plaintiff's Motion for Appointment of Counsel[80] and Motion to Compel,[81] and Lars Ducote's Motion to Stay Discovery,[82] be **DENIED AS MOOT**.

Signed in Baton Rouge, Louisiana, on January 14, 2020.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[80] R. Doc. 10.
[81] R. Doc. 25.
[82] R. Doc. 28.

13